**IN THE UNITED STATES DISTRICT COURT FOR**
**THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| Eagle 2020, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Adornus Cabinetry, LLC, et al.<br><br>Defendants. | No. 1:26-cv-08378<br><br>Hon. Sunil. R. Harjani |

**DEFENDANTS' JOINT MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

## INTRODUCTION

This is an Illinois lawsuit with no Illinois defendants, no Illinois conduct, and no Illinois nexus beyond Plaintiff's address. Plaintiff sues six out-of-state entities and one individual to collect fees under an Agreement that identifies a single party—"Adornus, LLC"—which, Plaintiff admits, did not exist when the contract was signed. (Compl. ¶¶ 17.) The asset sale that Plaintiff contends triggered its Success Fee was negotiated, documented, and closed among non-Illinois parties, involving assets, facilities, and records outside Illinois. (Compl. ¶¶ 13–19, 44–46, 54, 125–29.) Despite these out-of-state implications, Plaintiff recites Illinois's long-arm statute verbatim as to each Defendant, on information and belief, without identifying a single Illinois communication, negotiation, meeting, site visit, or act of performance by any Defendant. (Compl. ¶¶ 7–10.)

The Complaint should be dismissed on three independent grounds. *First*, the Court lacks personal jurisdiction over any Defendant. No Defendant is subject to general jurisdiction because no Defendant is "at home" in Illinois, and Plaintiff pleads no defendant-specific, forum-directed conduct sufficient to support specific jurisdiction. *Second*, the Complaint operates as an impermissible group pleading that fails to tie particular actions to each Defendant's liability. *Third*, nearly every substantive count fails because Plaintiff's allegations are so conclusory that it is impossible to ascertain what the basis for liability would be. All Defendants join this motion except Jorge Meijas who, as of this filing, has not been served.

## ALLEGED FACTS FROM THE COMPLAINT

Plaintiff Eagle 2020, LLC is an Illinois limited liability company that allegedly provides M&A advisory services. (Compl. ¶ 12.) On January 23, 2025, Plaintiff executed a written Advisory Agreement ("Agreement") identifying "Adornus, LLC" as the sole contracting party and Eagle as the "Advisor." (*Id.* ¶¶ 21–22, 77.) The Agreement obligated Eagle's counterparty to pay a $3,300

monthly fee for three months and a Success Fee equal to 6.0% of the total Purchase Price if a covered transaction closed during the term or within a twelve-month tail. (*Id.* ¶¶ 25–29.) The Advisory Agreement provides that "[a]ll disputes under this Agreement may be adjudicated in the courts located in Alameda county, California." (Compl. Exh. A, ¶ 7.)

No Defendant is an Illinois entity or resident. Adornus Cabinetry is a Wyoming LLC registered to do business in Florida (Compl. ¶ 13); Adornus Group is a New Jersey LLC (*id.* ¶ 14); Adornus Holdings and Adornus Manufacturing are South Carolina LLCs (*id.* ¶¶ 15–16); Adornus, LLC is a Delaware LLC (*id.* ¶ 17); Mejias resides in Florida (Compl. ¶ 18); and MJB Wood Group, LLC is a Delaware LLC (*id.* ¶ 19). Adornus, LLC—the entity identified as the contracting party—was not formed until August 7, 2025 (more than six months after execution of the Advisory Agreement and *after* the July 16, 2025 Asset Purchase Agreement). (*Id.* ¶¶ 17, 104.) Mejias was never an officer, manager, member, or agent of Adornus, LLC—nor could he have been, because it did not exist when the Advisory Agreement was signed and did not exist until after the Asset Purchase Agreement was executed. (*Id.* ¶ 104.)

"On information and belief," the Defendants "transacted business" with Plaintiff in Illinois, "made or performed a contract or promise substantially connected with Illinois," and "directed communications and performance-related conduct to Eagle in Illinois." (Compl. ¶¶ 7–10.) The Complaint does not identify where the Agreement was negotiated or signed, whether Defendant's representative traveled to Illinois, or any specific act of Illinois-directed performance. Mejias is alleged only to have "personally participated in conduct directed to Eagle in Illinois." (*Id.* ¶ 9.) As to MJB, Plaintiff alleges only that an MJB-affiliated purchaser acquired selected assets from non-Illinois sellers, without alleging that MJB itself purchased anything. (*Id.* ¶¶ 13–14, 44.) Plaintiff has not alleged that MJB has offices, employees, inventory, or operations in Illinois, or that it is

registered to do business in Illinois. Adornus Holdings and Adornus Manufacturing are alleged only to have "owned, held, or controlled" assets used in the business. (*Id.* ¶¶ 15–16.)

On July 16, 2025, an MJB-affiliated purchaser acquired selected assets of Adornus Cabinetry and Adornus Group pursuant to an Asset Purchase Agreement negotiated, documented, and closed among non-Illinois parties.[1] (*Id.* ¶¶ 44–46.) There is no allegation that the manufacturing assets, facilities, dealer network, and business records material to the alleged Purchase Price calculation are in Illinois. (*Id.* ¶¶ 54, 125–29.) There is no allegation that the transaction documents, closing materials, and witnesses to the execution and structuring of the Agreement and the July 16, 2025 transaction reside in Illinois. (*Id.* ¶¶ 140, 151–56.) Eagle alleges it was not paid the monthly fees or the Success Fee. (*Id.* ¶¶ 12, 39, 41, 50.) Eagle sues to recover $6,600 in unpaid fees and a Success Fee it estimates exceeds $1 million. (*Id.* ¶ 4.)

## ARGUMENT

### I. <u>This Court Lacks Personal Jurisdiction Over Any Defendant</u>.

Plaintiff's Complaint fails to assert a single, non-conclusory allegation to establish that this Court can exercise personal jurisdiction over Defendants in Illinois. The only adequately pleaded connection to Illinois is Plaintiff's own office address, yet all the entities haled into court (as well as the underlying assets sold) were outside of Illinois.

"Under Rule 12(b)(2), a court may dismiss a claim for lack of personal jurisdiction over a defendant." *Xiaowei Liu v. Defendants Identified on Schedule A*, 2026 U.S. Dist. LEXIS 77528, at *3 (N.D. Ill. Apr. 9, 2026). "The plaintiff has the burden of establishing personal jurisdiction, and where, as here, the issue is raised by a motion to dismiss and decided on the basis of written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of

[1] Plaintiff does not allege that MJB was the purchaser and does not provide any explanation as to how MJB was affiliated with the purchaser. Put differently, there is no allegation that MJB made a purchase at all.

jurisdictional facts." *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). "[V]ague generalizations or unsupported allegations . . . are not enough to support personal jurisdiction." *Richter v. Instar Enter. Int'l, Inc.*, 594 F.Supp.2d 1000, 1016 n.6 (N.D. Ill. 2009).

Plaintiff does not allege that the Court has general jurisdiction. Nor could it because no defendants' state of incorporation, principal place of business, or substantial operations are in Illinois. Thus, only specific jurisdiction is at issue here. Specific jurisdiction exists where "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state; (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

The Complaint fails at step one. Plaintiff is evasive as to where and how any Defendant touched Illinois—let alone purposefully availed themselves of the forum. The contract Plaintiff attaches is not with any named Defendant (except Adornus, LLC, which was not incorporated until several months *after* the contract was executed). Thus, Plaintiff's sole jurisdictional hook seems to be that Defendants have assets implicated by a contract between an Illinois Plaintiff and Adornus, LLC (an entity that, did not exist and could not have had assets, agents, or contacts with any forum at the time of the Agreement).

This is too attenuated. Reciting the long-arm statute does not overcome a jurisdictional infirmity. *See, e.g.*, *Dobrowolski v. Intelius, Inc.*, 2018 U.S. Dist. LEXIS 240434, at *6 (N.D. Ill. May 21, 2018). Paragraphs 7 through 10 do just that, asserting—as to each Defendant, and each qualified by "upon information and belief"—that the Defendants "transacted business with Eagle in Illinois," "made or performed a contract or promise substantially connected with Illinois," and

"directed communications and performance-related conduct to Eagle in Illinois." (Compl. ¶¶ 7–10.) No allegation identifies an Illinois communication, negotiation, meeting, visit, or act by any Defendant. The Complaint never alleges where the Agreement was negotiated, signed, whether any Defendant's representative traveled to Illinois, or what any Defendant did in Illinois.

Even if such allegations are sufficient, Plaintiff's claims do not relate to or arise out of a defendant's contacts that "bear on the substantive legal dispute between the parties or relate to the operative facts of the case." *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1024 (7th Cir. 2009). "In contract cases, personal jurisdiction does not depend on such mechanical tests as the place of contracting or the place of performance, but upon factors such as the place of negotiations and the place of contemplated future consequences." *Buxton v. Wyland Galleries Hawaii*, 275 Ill.App.3d 980, 982-83 (4th Dist. 1995). "The mere making of a contract with a forum resident does not constitute a consent to jurisdiction." *Id*. Plaintiff just asserts relatedness.

And the allegations Plaintiff does make defeat jurisdiction. True, the Agreement identifies "Adornus, LLC" as the sole contracting party (Compl. ¶¶ 22, 77), yet Plaintiff concedes that no entity by that name existed when the Agreement was signed. (Compl. ¶¶ 17, 104.) The Delaware entity that bears that name was not formed until August 2025, more than six months after the January 2025 execution date. (Compl. ¶ 17.) Plaintiff pleads no facts showing that any other Adornus Defendants—Wyoming, New Jersey, or South Carolina LLCs (Compl. ¶¶ 13–16)—negotiated, executed, or performed the Agreement in Illinois (Compl. ¶ 11), reflecting the parties' contemporaneous understanding that Illinois was not the situs of the transaction. Another clue is the Agreement's designation of courts in Alameda County, California as a forum for any dispute. Ultimately, just because Plaintiff maintains its offices in Chicago does not mean any Defendant does, and Plaintiff's unilateral presence cannot supply the Defendants' missing contacts.

Finally, Plaintiff attempts to use a series of pleading tricks to bootstrap jurisdiction. None are consistent with the law. *First*, Plaintiff sweeps disparate entities together through the "Adornus Enterprise" label (Compl. ¶ 1 n.1). But "vague generalizations or unsupported allegations . . . are not enough to support personal jurisdiction." *Richter v. Instar Enter. Int'l, Inc.*, 594 F.Supp.2d 1000, 1016 n.6 (N.D. Ill. 2009). Pleading devices do not create jurisdictional facts and cannot substitute for the defendant-specific, forum-directed conduct that due process requires. *Second*, Plaintiff suggests that successor liability confers jurisdiction because an MJB-affiliated entity acquired selected assets of Adornus Cabinetry and Adornus Group. But MJB itself was not the purchaser, and Adornus, LLC—formed after the transaction—was not an acquirer, a seller, or a participant in the transaction. Illinois has refused to premise jurisdiction on successor liability, holding that "a finding that [defendant] might be the corporate successor, and that therefore an Illinois court might have personal jurisdiction by virtue of that potential fact, translates into a finding that Illinois courts might not have jurisdiction." *Flanders v. Cal. Coastal Cmtys., Inc.*, 356 Ill.App.3d 1113, 1120 (5th Dist. 2005). Plaintiff cannot use the prospect of liability to bootstrap jurisdiction. *Third*, the alleged tortious act identified in Plaintiff's contract-interference claim relates to a transaction occurring outside Illinois, but "tortious acts committed outside of Illinois which cause economic injury in Illinois do not subject the alleged tortfeasor to the jurisdiction of Illinois courts." *Jan Mark, Inc. v. Reidy*, 1997 U.S. Dist. LEXIS 737, at *13 (N.D. Ill. Jan. 27, 1997) (collecting cases). Plaintiff fails to plead non-conclusory facts showing that MJB knew of the Agreement. Accordingly, the Complaint should be dismissed for lack of personal jurisdiction.

## II. <u>The Seventh Circuit Forecloses "Collective Responsibility" Pleading</u>.

The Complaint fails to adequately explain or identify the specific liability for each served defendant. "A complaint based on a theory of collective responsibility must be dismissed" because "[l]iability is personal." *Bank of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). "An

allegation that a group of defendants is liable 'without any details about who did what' does not state a claim for relief." *Milchtein v. Milwaukee Cnty.*, 42 F.4th 814, 824 (7th Cir. 2022) (citation omitted). "[G]roup pleading does not suffice" when Plaintiff "does not provide the Moving Defendants with notice of their role in the alleged violations." *Smith v. Major Coleman III*, 2026 U.S. Dist. LEXIS 108627, at *13 (N.D. Ill. May 12, 2026). By collapsing multiple corporate entities into the undefined 'Adornus Enterprise', or grouping all Defendants generally, and attributing liability to the group, the Complaint deprives each served defendant of notice regarding the specific conduct that gave rise to the complaint. This is particularly true of MJB, where Plaintiff repeatedly alleges that "MJB Wood, Adornus LLC, or an MJB-affiliated purchaser" acquired, controlled, continued, or participated in the transaction but never identifies what MJB itself acquired, assumed, controlled, or continued. Such pleading flunks Rule 8 and should be dismissed.

## III. <u>The Complaint Fails to State a Claim</u>.

### A. Count I (Breach of the Agreement) Should be Dismissed.

Count I should be dismissed because the named Defendants are not parties to the Agreement. "To establish a breach of contract, the plaintiff must show the existence of a valid and enforceable contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and resulting injury to the plaintiff." *Sherman v. Ryan*, 392 Ill.App.3d 712, 732 (1st Dist. 2009). Here, Plaintiff, by its own terms, entered an agreement with an entity called "Adornus, LLC"—not any of the remaining Defendants. (Compl. ¶ 22.) Accordingly, Count I should be at least dismissed as to entities not named in the Agreement.

Even for Adornus, LLC, however, Plaintiff still stumbles. It attempts to enforce the Agreement against an entity that did not exist at the consummation of the contract—or at any time before, during, or for weeks after the transaction that allegedly triggered the Success Fee. Illinois courts have repeatedly rejected attempts to bind parties that did not exist at the time a contract was

entered and was not ratified by the company. *See Chiurato v. Dayton Estates Dam & Water Co.*, 2017 IL App (3d) 160102, ¶ 33 ("A preincorporation contract may be binding upon a corporation only if the contract is specifically ratified by the board of directors."); *Charter Fitness Holding I LLC v. South Branch Capital Partners, LLC*, 2024 IL App (1st) 230659-U, ¶ 29 (dismissing a breach of contract claim where the entity was formed after the creation of the contract because it "could not breach a contract it was not a party to."). Here, Plaintiff does not—and cannot—allege that Adornus, LLC ratified the Agreement before the transaction closed, because Adornus, LLC did not yet exist. Nor can Plaintiff rely on an agency theory: Mejias was never an officer, manager, member, or authorized agent of Adornus, LLC, because one cannot serve as agent of a principal that has no legal existence. Thus, this Count should be dismissed.

**B. Count II and Count V (Declaratory Judgments) are Procedurally Improper.**

Neither Count II nor Count V satisfies the preconditions for a declaratory judgment. *First*, a Plaintiff must "demonstrate[] a substantial risk of harm in the future" to seek a declaratory judgment. *Holmes v. Progressive Universal Insurance Co.*, 2023 U.S. Dist. LEXIS 3348, at *32 (N.D. Ill. Jan. 9, 2023). Here, Plaintiff challenges a past breach of contract and offers no explanation as to why there is an urgency or need for a declaration of rights. Based on the allegations in the complaint, the July 16, 2025 transaction has already been consummated. (Compl. ¶ 44). *Second*, "courts have discretion to decline to hear a claim for declaratory judgment, and federal '[c]ourts commonly exercise their discretion and dismiss declaratory judgment claims where they are duplicative of breach of contract claims.'" *Id.* at 32–33 (citation omitted). Here, Plaintiff's declaratory judgment actions will be resolved by its contract claims. Thus, any declaratory relief would be duplicative of the substantive counts.

**C. Count V is Neither a Recognized Claim Nor Sufficiently Pleaded.**

Plaintiff may not seek a declaratory judgment on alter ego, veil piercing, and integrated

enterprise under Illinois law. As a preliminary matter, "[c]ourts have long held that, under Illinois law, piercing the corporate veil is an equitable remedy, not a cause of action." *United States v. All Meat & Poultry Products Stored at Lagrou Cold Storage*, 470 F.Supp.2d 823, 833 (N.D. Ill. 2007). Packaging the same theory as declaratory relief does not cure that defect, and Plaintiff pleads only information-and-belief allegations that recite veil-piercing factors without facts. That is insufficient, especially in a contract case triggering more stringent veil-piercing standards.

Notwithstanding the procedural infirmity, Plaintiff fails to state a non-conclusory claim. Plaintiff's burden is especially high "in breach of contract cases, [where] courts should apply even more stringent standards to determine when to pierce the corporate veil than they would in tort cases." *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 Ill.App.3d 1019, 1033 (1st Dist. 2007). "This is because the party seeking relief in a contract case is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of the limited liability associated with the corporate business form." *Id* (citation omitted). Plaintiff's allegations are *exclusively* pleaded on information and belief and merely recite the factors in the alter ego and veil piercing analysis. This is insufficient even under a liberal notice pleading standard. *See Rehabcare Group East, Inc. v. Certified Health Management*, 2007 U.S. Dist. LEXIS 82952, at *7 (N.D. Ill. Nov. 8, 2007) (collecting cases). Even if it were sufficient, it fails to meet the heightened substantive standard *Tower Investors* imposes for contract claims. Accordingly, this Count should be dismissed.

**D. Count III (Fraudulent Inducement) is Duplicative of the Contract Claim.**

Plaintiff's fraud claim cannot succeed because there is no allegation tying the identity of the Adornus entity to Plaintiff's decision to transact through the Agreement. "Fraudulent inducement is a form of common-law fraud." *Avon Hardware Co. v. Ace Hardware Corp.*, 2013

IL App (1st) 130750, ¶ 15 (citation omitted). "To state a cause of action for common-law fraud, a plaintiff must plead: (1) a false statement of material fact; (2) knowledge or belief by the defendant that the statement was false; (3) an intention to induce the plaintiff to act; (4) reasonable reliance upon the truth of the statement by the plaintiff; and (5) damage to the plaintiff resulting from this reliance." *Id*. "If an intention not to perform constituted fraud, every transaction might be avoided where the facts justified an inference that a party did not intend to pay the consideration or keep his agreement." *Miller v. Sutliff*, 241 Ill. 521, 527 (1909).

"In order to plead a valid claim for fraudulent inducement under the Federal Rule of Civil Procedure 9(b), the claimant must state facts with particularity to describe the circumstances constituting fraud." *American Diagnostic Medicine, Inc v. Cardiovascular Care Grp.*, 2004 U.S. Dist. LEXIS 12170, at *6 (N.D. Ill. June 30, 2004). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (citation omitted).

Here, the complaint does not allege any facts showing that the *identity* of the contracting entity is what caused Plaintiff to perform services it otherwise would not have performed, caused it to incur different expenses, or deprived it of any bargained-for opportunity. Instead, the alleged damages consist of unpaid contractual compensation—the monthly fees, Success Fee, and value of services rendered. (Compl. ¶ 97.) Those are contract damages arising from an alleged failure to pay under the Agreement, not damages proximately caused by reliance on a misrepresentation regarding the contracting entity's legal existence. As pleaded, the alleged fraud repackages a contract-formation or breach-of-contract dispute and does not identify any independent injury attributable to the alleged misrepresentation itself. Count III should be dismissed.

**E. Count VI (Accounting) Should be Dismissed Because it is Unnecessary.**

Plaintiff may not obtain an accounting where it has a remedy at law. To obtain an accounting, "the complaint must establish that there is no adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Tufo v. Tufo*, 2021 IL App (1st) 192521, ¶ 93 (citation omitted). A court will find an adequate remedy at law when a plaintiff "had the right through discovery to obtain all the information which would be contained in an equitable accounting." *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819, ¶ 78. Here, Plaintiff could obtain discovery if this case survived a motion to dismiss in a court with jurisdiction. Plaintiff pleads no fiduciary relationship, contract, mutual accounts, or other duty requiring MJB—a non-party to the Agreement—to account to Eagle. Count VI should be dismissed because ordering an accounting "would be unnecessary." *Id*. at ¶ 71.

**F. Count VII (Successor Liability) Fails to State a Non-Conclusory Claim.**

Plaintiff's successor liability count lacks facts sufficient to state a claim. "The well-established general rule in Illinois is that a corporation which buys all the assets of another corporation is not liable for the seller corporation's debts or liabilities absent an express or implied agreement to assume such debts or liabilities." *Barron v. Kane & Roach, Inc.*, 79 Ill.App.3d 44, 47 (1st Dist. 1979). "The general rule against successor liability applies to contractual obligations, as well as to tort liability." *Joseph Huber Brewing Co. v. Pamado, Inc.*, 2006 U.S. Dist. LEXIS 67174, at *24 (N.D. Ill. Sep. 5, 2006). "Courts have recognized several exceptions to this general rule: (1) where there is an express or implied agreement of assumption [sic]; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent

purpose of escaping liability for the seller's obligations." *Barron*, 79 Ill.App.3d at 47.

Plaintiff acknowledges that the July 2025 transaction was an asset purchase, triggering the rule that the purchaser is not liable for the seller's obligations. (Compl. ¶ 2.) It pleads no facts showing an express assumption of Plaintiff's Success Fee claim; it alleges only that liabilities were "expressly or impliedly assumed" because they were "necessary to continue the business." (*Id.* ¶ 142.) It does not allege continuity of ownership between seller and purchaser, continuation of the same corporate entity under a different form, transfer of shareholders, or cessation of the seller in circumstances suggesting the purchaser is effectively the same entity. Plaintiff only alleges that the purchaser acquired assets, goodwill, customer relationships, trade names, and enterprise value, and continued Adornus brand operations (*Id.* ¶¶ 136–139.) That is insufficient.

Worse yet, Plaintiff does not even attempt to state a standard asset-purchaser claim against the buyer; it seeks to impose the seller's obligations on an affiliate of the buyer—MJB—without pleading any independent basis to do so. Those allegations do not fall within any recognized exception to Illinois' rule against successor liability. In short, the pleading recites the labels "assumption," "de facto merger," "mere continuation," and "fraudulent transfer of assets," but offers no non-conclusory factual allegations that would bring the transaction within any exception to the general rule of nonliability for asset purchasers.

**G. Count VIII (Tortious Interference) Fails to State a Non-Conclusory Claim.**

Plaintiff does not allege the knowledge or inducement elements. "For a tortious interference claim to survive a motion to dismiss, the complaint must allege specific conduct in which the defendants engaged." *Medscript Pharmacy, LLC v. My Script, LLC*, 77 F. Supp. 3d 788, 796 (N.D. Ill. 2014). This requires "factual allegations, not conclusions of law, from which it reasonably may be inferred that the defendant's alleged acts of inducement were committed

intentionally and improperly and were directed at the other party in plaintiff's contractual relationship." *L. Offices of Charles Chejfec, LLC v. Franz*, 2023 IL App (3d) 230083, ¶ 40. "A bare assertion to that effect in a complaint is insufficient unless that assertion is supported by allegations of fact." *Id.*

Here, Plaintiff's complaint is nothing but bare, conclusory assertions. With respect to knowledge, Plaintiff provides a restatement of the legal standard without any explanation as to when or how MJB learned of the Agreement. This fails to state a claim because a party cannot induce a breach of a contract it does not know existed. With respect to inducement, Plaintiff fails to identify any mechanism as to how or why MJB would have intentionally and improperly intruded on the contractual relationship. Nor does it explain what specific conduct MJB engaged in that would rise to the level of being tortious. At most, the Complaint alleges conduct consistent with an arm's-length acquisition for legitimate business purposes, not improper targeting of Eagle's contract. Without these facts, Plaintiff cannot state a claim.

**H. Count IX (Fraudulent Transfer) is Internally Inconsistent and Inadequately Pled.**

Count IX trips at the outset. Eagle's entitlement to the Success Fee arose only if the underlying transaction closed. Plaintiff is asking the Court to infer that Defendants intentionally consummated a transaction that generated more than $1 million in additional contractual liability to avoid paying *that liability*. If Defendants' objective were to avoid the Success Fee, Defendants would not have entered a transaction triggering the fee. There is no plausible explanation as to why parties seeking to avoid a contractual obligation would deliberately take the one action guaranteed to create it. Even assuming Count IX overcomes this logical shortcoming, it is too inadequately pled to go further. Courts will find actual or constructive fraud where a party transfers property:

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due

740 ILCS 160/5(a). "Both actual and constructive fraud claims are subjected to Rule 9(b)'s heightened pleading requirement." *Damian v. Courtright*, 2021 U.S. Dist. LEXIS 138602, at *4 (N.D. Ill. July 26, 2021). "To plead an actual or constructive fraud with the necessary particularity, 'the complaint must allege what (or how much) was transferred, when the transfer was made, how it was made, who made it, who received it, and under what circumstances.'" *In re Glick*, 568 B.R. 634, 657 (Bankr. N.D. Ill. 2017) (citation omitted).

Both are alleged, but neither adequately pleaded.

**Constructive Fraud**. Although the Complaint recites the statutory buzzwords, it pleads no facts supporting a showing of constructive fraud. The Complaint does not identify what property was transferred, who transferred it, who received it, what value was exchanged, why that value was not reasonably equivalent, or any facts showing the financial condition of any transferor before or after the alleged transfer. Nor does it allege balance-sheet facts, cash-flow facts, capitalization facts, or any other facts supporting insolvency or inadequate capitalization. Instead, it offers only formulaic recitations of the elements, which do not survive Rule 12(b)(6).

**Actual Fraud**. The Complaint never identifies a single transfer that would rise to actual fraud. It does not state the date of any fraudulent transfer, the property transferred, the transferor, the transferee, the amount or value transferred, or consideration received. Instead, it refers generically to unspecified "transfers, distributions, payments, retentions, or dispositions" supposedly occurring "in connection with or following" the transaction. (Compl. ¶¶ 164–165.) As

to MJB, Plaintiff does not identify any transfer to MJB, any asset MJB received, any value exchanged, or any facts showing that MJB was a transferee or beneficiary of a fraudulent transfer. Plaintiff alleges only that unidentified transfers may have been made to, for the benefit of, or under the direction or control of MJB, an MJB-affiliated purchaser, or others. That group pleadings does not identify any MJB-specific transfer. The allegations of intent are equally conclusory, asserting upon information and belief that Defendants acted with intent to hinder, delay, or defraud Eagle. (Compl. ¶ 169.) These bare allegations do not satisfy Rule 9(b) and provide no basis from which fraudulent intent could be inferred. Accordingly, the fraudulent transfer claim should be dismissed.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be granted.

Respectfully submitted,

By: /s/ Steven A. Block
Steven A. Block
Leonard Brahin
**Holland & Knight LLP**
150 North Riverside Plaza
Suite 2700
Chicago, IL 60606
Telephone: 312.715.3600
Fax: 312.578.6666
steven.block@hklaw.com
leonard.brahin@hklaw.com

*Attorneys for ADORNUS CABINETRY, LLC, ADORNUS GROUP, LLC, ADORNUS HOLDINGS, LLC, and ADORNUS MANUFACTURING, LLC*

By: */s/ Andrew P. Shelby*
Andrew P. Shelby
MICHAEL BEST & FRIEDRICH LLP
444 West Lake Street, Suite 3200
Chicago, IL 60606
Telephone: 312.596.5884
Facsimile: 312.222.0818
Andrew.shelby@michaelbest.com

Lindsey M. Brown
Texas State Bar No. 24087977
*filing pro hac vice
lbrown@jw.com
Sarah J. Starr
Texas State Bar No. 24132203
*filing pro hac vice
sstarr@jw.com
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Phone (214) 953-6142
Fax (214) 661-6899

*Attorneys For Defendants MJB Wood Group, LLC and Adornus, LLC*